IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEROY GOREE, ) | |
| ) | Civil Case No. 14-cv-5809 |
| Petitioner, ) | (related Criminal Case No. 10-cr-778-2) |
| ) | |
| v. ) | Judge Robert M. Dow, Jr. |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Leroy Goree's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [1] and his motion to amend his § 2255 petition [12]. For the reasons stated below, Petitioner's motions are denied. The Court declines to certify any issue for appeal pursuant to 28 U.S.C. § 2253(c)(2), and directs the Clerk to enter judgment in favor of the United States.

**I.  Background**

Petitioner Leroy Goree is currently serving an 87-month sentence after being convicted by a jury of conspiracy to distribute 280 grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1). See *United States v. Goree*, Case No. 10-cr-778-2, Dkt. 167 (N.D. Ill.).[1] The conviction relates to two instances in the spring of 2008 when Petitioner and his friend (and later co-defendant) Vanessa Woods drove from St. Louis to Chicago to purchase crack cocaine with the intent to distribute the drugs back in St. Louis. Following the second transaction, federal

---

[1] Petitioner also has pending in his criminal case, No. 10-cr-778-2, a motion for reduction of sentence pursuant to Amendment 782. The Court convened a status hearing last week at which both Petitioner (through the Federal Defender Program) and the Government (through the United States Attorney) were represented. The matter is set for status hearing on July 20, 2015, at which time the Government will advise the Court whether it agrees with Petitioner's position that he is entitled to a reduction in sentence. By the terms of Amendment 782, any such reduction cannot take effect until after November 1, 2015.

agents from the Department of Alcohol, Firearms, and Tobacco ("ATF") pursued Petitioner and Woods, resulting in a high-speed car chase. Petitioner and Woods were later indicted and charged with various drug-related violations stemming from these two drug transactions.

Petitioner was convicted on March 21, 2013 and sentenced on July 29, 2013. He appealed his conviction to the Seventh Circuit Court of Appeals on July 25, 2013, and the Seventh Circuit affirmed his conviction on July 17, 2014. Petitioner subsequently filed this motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [1], arguing four grounds of ineffective assistance of trial and appellate counsel in violation of the Sixth Amendment.

### A. The April 29, 2008 Drug Transaction

On April 29, 2008, Petitioner and Ms. Woods drove from St. Louis to Chicago in Petitioner's minivan to purchase crack cocaine, which they intended to distribute in St. Louis. The two met Christopher Gavin, a drug broker, in the parking lot at the Garfield Gyros on Chicago's south side. Gavin brokered a drug deal involving a large-scale supplier of crack cocaine, Isaiah Hicks, who was under investigation by the ATF. In short, with Gavin's brokering assistance, the two purchased four 63-gram bags (nine ounces total) of crack cocaine for $4,900. The ATF recorded several phone conversations leading up to this drug transaction, and they had active surveillance on the Garfield Gyros parking lot during the exchange itself.

### B. The May 6, 2008 Drug Transaction

One week later, Gavin brokered another deal whereby Petitioner and Ms. Woods purchased 18 ounces of crack cocaine (a half kilogram) for $9,700. Again, the two drove up from St. Louis in Petitioner's minivan to the Garfield Gyros parking lot where the transaction took place. And again, ATF agents were monitoring the transaction as it occurred. As Petitioner and Ms. Woods were leaving the parking lot (Ms. Woods was driving), ATF agents attempted to stop

2

the minivan to recover the drugs. But the two sped away, leading to a high-speed car chase through the streets of Chicago. The chase covered approximately five miles of mostly-residential streets, reaching speeds of 50–60 miles per hour. Petitioner later admitted to federal agents that during the chase he told Ms. Woods to speed up to try to create some distance between the van and the pursuing officers so that he could dispose of the crack cocaine. At one point during the chase, Petitioner further instructed Ms. Woods to swerve in front of a bus, creating a visual barrier between the minivan and the police, allowing Petitioner to throw the drugs out the window without the police seeing. Petitioner and Ms. Woods eventually pulled over. The agents were unable to locate the drugs, and they released Petitioner and Ms. Woods in order to preserve the ongoing wiretap investigation of Isaiah Hicks' drug-trafficking organization.

> C. **Vanessa Woods**

Ms. Woods has spoken to federal agents on several occasions about what happened during those two drug transactions, including the role that Petitioner played. In a May 2009 interview, she said that she "had never really been in trouble before and didn't know what to do," and that Petitioner "was like a brother to her and [she] didn't want to get him in any more trouble than he was already in." [7-2, at 2.] During that interview, she nonetheless confirmed that she and Petitioner bought "a lot—between 9 ounces and a half kilogram of crack cocaine" during the two drug transactions [7-2, at 2.] Similarly, in her May 17, 2012 plea agreement, Ms. Woods stated that Petitioner accompanied her to Chicago in his van "to assist with the anticipated drug transaction," and that the drugs in question were given to both her and to Petitioner. [7-1, at 2.]

In a September 2009 interview with federal agents, Ms. Woods claimed that she was the one who threw the crack cocaine out of the van window [1, at 40], but in her plea agreement, she said that Petitioner was the one who threw the drugs out of the van window. [7-1, at 3.]

Ms. Woods was eventually indicted and charged along with Petitioner for various drug offenses related to their two drug purchases. Petitioner's trial counsel did not call Ms. Woods as a witness at Petitioner's trial to testify on his behalf, which Petitioner now alleges as a basis for one of his ineffective assistance of counsel claims.

### D. Petitioner's Incriminating Statements

On July 9, 2009, approximately six months prior to Petitioner's arrest and approximately one year after the two drug transactions in question, several agents interviewed Petitioner at his home in St. Louis. The interview was conducted during the day on Petitioner's front porch. ATF Agent Labno testified that, despite the non-custodial nature of the interview, he nonetheless advised Petitioner of his *Miranda* rights by reviewing a printed ATF form listing those rights, and Petitioner acknowledged this by stating that he "understood his rights but that he didn't need a lawyer, he was willing to talk with [the agents]." [7, at 12.] Petitioner refused to sign the ATF form, writing the phrase "refused to sign" on the signature line. [1, at Ex. C.] Petitioner claims, contrary to Agent Labno's testimony, that he "advised [the agents] that he would rather speak to a lawyer." [1, at 20.]

Despite Petitioner's alleged request for an attorney, he nonetheless continued to speak with the agents. During the ensuing interview, Petitioner made several incriminating statements, including an admission that he and Ms. Woods drove to Chicago in late April and early May 2008 to purchase a half kilo of crack cocaine. Petitioner also described the high-speed car chase, explaining that he and Ms. Woods were attempting to create enough space between his van and the police vehicles so that he could throw the drugs out of the window without the agents seeing. He told the agents that he instructed Ms. Woods to swerve in front of a bus—which she did—allowing him to throw the drugs out of the window. Petitioner now contends that

4

his trial counsel was constitutionally deficient for failing to move for the suppression of these incriminating statements at trial, arguing that the agents obtained these statements in violation of his Fifth Amendment right against self-incrimination.

### E. Sentence Enhancement

At sentencing, Petitioner received a two-point sentence enhancement pursuant to Guideline § 3C1.2 based on his involvement in the high-speed car chase—in particular, by advising Ms. Woods in her efforts to evade the police. The Guidelines say that "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase [the base offense level] by 2 levels." U.S.S.G. § 3C1.2. And Application Note 5 to that provision says that "[u]nder this section, the defendant is accountable for * * * conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. § 3C1.2 cmt. n.5.

Prior to sentencing, Petitioner's counsel objected to the enhancement, arguing that the incriminating conduct at issue "[wa]s based on the decisions and driving behavior of Vanessa Woods and was behavior beyond [Petitioner's] control and outside the parameters of any possible conspiratorial purpose." *United States v. Goree*, Case No. 10-cr-778-2, Dkt. 160, at 9 (N.D. Ill.). The Court acknowledged counsel's argument at sentencing, but still found the enhancement to be warranted based on credible evidence in the record.

Petitioner now alleges that his trial counsel was deficient for failing to argue that Ms. Woods made all of the driving decisions on her own, and that his appellate counsel was deficient for failing to appeal the Court's assessment of the § 3C1.2 sentence enhancement.

**II.    Analysis**

The Seventh Circuit has stressed that "relief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Under § 2255, relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255). A § 2255 motion is not a substitute for a direct criminal appeal. See *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007) (stating that a § 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal").

Petitioner raises four separate claims of ineffective assistance of counsel (three trial, one appellate) in violation of the Sixth Amendment.[2] In order to prevail on such a claim, Petitioner must meet the familiar two-pronged "performance" and "prejudice" test set forth in *Strickland v. Washington*, establishing that (1) his lawyer's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that the result of the proceedings would have been different, but for his counsel's "unprofessional errors." *Strickland v. Washington*, 466 U.S. 688, 694 (1984); see also *Ward v. Jenkins*, 613 F.3d 692, 698 (7th Cir. 2010). Both components of the test must be satisfied or the claim must be denied; "the lack of either is fatal." *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996).

---

[2] The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence." The right to counsel "is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). When a lawyer provides objectively unreasonable advice—that which falls outside "the range of competence demanded of attorneys in criminal cases," *Strickland*, 466 U.S. at 687)—a petitioner is denied his Sixth Amendment rights.

Regarding the performance prong, a court must consider "all of the circumstances of [the] case" in determining whether counsel's acts or omissions "were made outside the wide range of professionally competent assistance." *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000) (citing *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995)). "When the only record on which a claim of ineffective assistance is based is the trial record, every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight" such that "[i]t is no surprise that such claims almost always fail." *United States v. Taglia*, 922 F.2d 413, 417–18 (7th Cir. 1991); see also *Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

Regarding the prejudice prong, if a court finds an attorney's representation to be unconstitutionally deficient, it must then decide whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Allen v. Chandler*, 555 F.3d 596, 600 (citing *Strickland*, 466 U.S. at 690). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; see also *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, "[c]ounsel's errors must have been 'so serious as to deprive the defendant of a fair trial.'" *Carter v. Butts*, 760 F.3d 631, 635 (7th Cir. 2014) (quoting *Strickland*, 466 U.S. at 693).

Review of a trial attorney's performance is "highly deferential," and a district court's analysis must begin with a "strong presumption" that the defendant's attorney provided adequate representation to his client. *United States v. Meyer*, 234 F.3d 319, 324–25 (7th Cir. 2000). Petitioner must show that his counsel made "errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

### A. Failure to Call Vanessa Woods as a Witness

Petitioner alleges that his trial attorney violated his Sixth Amendment right to counsel by failing to call Vanessa Woods—Petitioner's co-defendant in his underlying criminal case—as a witness at trial.

"'The Constitution does not oblige counsel to present each and every witness that is suggested to him.'" *United States v. Berg*, 916 F.3d 490, 499 (7th Cir. 2013) (quoting *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005)). Instead, "it simply obliges counsel to investigate the various lines of defense available in a given case." *Id.* (citing *Wiggins v. Smith*, 539 U.S. 510, 521–23 (2003)). "'If counsel has investigated witnesses and consciously decided not to call them, the decision is probably strategic.'" *Id.* (quoting *Best*, 426 F.3d at 945). Accordingly, an attorney's decision "'to call or not to call a witness' is 'generally not subject to review.'" *Id.* (quoting *Best*, 426 F.3d at 945).

Petitioner's counsel's decision to not call Ms. Woods as a witness was clearly strategic. As a co-defendant in Petitioner's criminal case, Ms. Woods' recounting of the situation was well documented, and thus there was no lack of investigation regarding her potential testimony. Key among her various tellings of her criminal escapades with Petitioner is her plea agreement—a sworn statement before the Court—in which she stated that Petitioner accompanied her to Chicago in his van "to assist with the anticipated drug transaction," that the drugs in question

were given to both her and to Petitioner, and that Petitioner was the one who threw the crack cocaine out of the van window during the high-speed car chase. [7-1, at 2–3.] These statements are consistent with statements that Ms. Woods made to federal agents during an interview in May 2009, in which she stated that she and Petitioner bought "a lot—between 9 ounces and a half kilogram of crack cocaine." [7-2, at 2.]

To be sure, Ms. Woods gave partially-contradictory testimony during other interviews with agents, including a September 2009 interview with federal agents where she claimed that *she* was the one who threw the crack cocaine out of the van window. [1, at 40.] But other aspects of Ms. Woods' story were consistent across her various statements, including the fact that Petitioner accompanied her to the various drug transactions and participated in them. Further, Ms. Woods—who "had never really been in trouble before and didn't know what to do"—said in her May 2009 interview that Petitioner "was like a brother to her and [she] didn't want to get him in any more trouble than he was already in," [7-2, at 2], casting at least some doubt on any exculpatory comments she might have made regarding Petitioner.

While it is possible that Ms. Woods might have given partially favorable testimony regarding Petitioner's involvement in the various drug transactions in question, the Government had ample ammunition (in the form of Ms. Woods' own prior statements) with which to impeach her on cross-examination. Alternatively, because Ms. Woods was a co-defendant, she had concerns about her own criminal exposure, and thus it is likely that her counsel would have advised her to assert her Fifth Amendment privilege against self-incrimination on the stand. Thus, had Petitioner's counsel called Ms. Woods, the possible outcomes include (a) her assertion of Fifth Amendment privilege, (b) a reiteration of her sworn statement regarding Petitioner's incriminating acts, or (c) impeachable testimony regarding Petitioner's lack of involvement in

the drug transactions. None of these outcomes would have assisted Petitioner in defending the charges against him—at least not enough to alter the outcome of his trial—and thus the decision to not call Ms. Woods as a witness was a reasonable (and constitutionally acceptable) one.

### B. Failure to Move to Suppress Petitioner's Incriminating Statements

Petitioner next alleges that his trial counsel was constitutionally deficient in failing to move to suppress certain incriminating statements that Petitioner made during an interview with federal agents at his home in St. Louis in July of 2009. During this encounter, Agent Labno read Petitioner his *Miranda* rights (despite the fact that Petitioner was not in custody at the time), and Petitioner confirmed that he understood his rights. Petitioner refused to sign a written *Miranda* waiver, but continued to speak with the agents, wherein he admitted that he and Ms. Woods drove to Chicago in late April and early May 2008 to purchase a half kilo of crack cocaine. Petitioner also described the high-speed car chase with the police, explaining that he and Ms. Woods were attempting to create enough space between their van and the police vehicles so that they could pull in front of another vehicle long enough to throw the drugs out of the window without the agents seeing. Petitioner now contends that the federal agents obtained these statements in violation of his Fifth Amendment right to counsel during custodial interrogations, and that his trial counsel was constitutionally deficient (under the Sixth Amendment right to counsel) for failing to move for the suppression of these incriminating statements at trial.

When assessing whether counsel was deficient for electing not to file a particular motion, "[t]he likelihood of success of [the] motion * * * is directly relevant to the question of whether the failure to make it constitutes inadequate assistance of counsel." *United States v. Madewell*, 917 F.2d 301, 304 (7th Cir. 1990). This inquiry invokes both prongs of the *Strickland* test,

because a refusal to file a non-meritorious motion (a) reflects competent legal acumen and (b) belies claims of prejudice.

Here, the likely success of a motion to suppress would have been very low. First, and most relevant here, Petitioner was not in custody during the interview in question, and "[t]he Fifth Amendment right to counsel safeguarded by *Miranda* cannot be invoked when a suspect is not in custody." *United States v. Wyatt*, 179 F.3d 532, 537–38 (7th Cir. 1999); *United States ex rel. Church v. De Robertis*, 771 F.2d 1015, 1018 (7th Cir. 1985) ("Because *Miranda* applies only to 'custodial interrogation,' it makes no difference whether [defendant's] formal waivers of his *Miranda* rights before writing his confession were valid or ineffective, since there was no custodial interrogation in this case."). Because the incriminating statements at issue here were not made pursuant to a custodial interrogation, any argument over the validity of the *Miranda* warnings in this case is irrelevant.[3] For this reason alone, Petitioner's counsel's decision to not move to suppress Petitioner's incriminating statements was not unreasonable or beyond the bounds of the Sixth Amendment.

Second, even if Petitioner did have a Fifth Amendment right to counsel (despite the fact that Petitioner does not contest that the interrogation was non-custodial), it is likely that Petitioner waived that right. The rule under *Miranda* is that "once a suspect requests an attorney, a police [custodial] interrogation must cease until an attorney is present, *unless the conversation is reinitiated by the suspect*." *Whitehead v. Cowan*, 263 F.3d 708, 717 (7th Cir. 2001) (emphasis added). Even giving Petitioner the benefit of the doubt in assuming that he requested an attorney, it is undisputed that Petitioner nonetheless proceeded to incriminate himself, and Petitioner does

---

[3] The fact that Petitioner refused to sign the written *Miranda* waiver is irrelevant because the interrogation was not custodial. Regardless, *Miranda* does not require a written waiver; a defendant who has been read his *Miranda* rights and confirmed his understanding of those rights can still waive them despite his refusal to sign a written waiver. See, *e.g.*, *United States v. Smith*, 218 F.3d 777, 781 (7th Cir. 2000).

not contend that his incriminating statements were somehow involuntary or that the agents pressured Petitioner into making them. Petitioner's likely waiver of any Fifth Amendment privilege is yet another reason why it was reasonable (and thus constitutionally acceptable) for Petitioner's counsel to refrain from seeking to suppress Petitioner's incriminating statements.

## C. The Endangerment-in-Flight Enhancement

Petitioner's third and fourth arguments regarding ineffective assistance of counsel relate to his trial and appellate counsels' purported failure to properly address/appeal the § 3C1.2 enhancement that was applied to Petitioner's sentence based on the danger created by his high-speed car chase with the police, which resulted in a two-level increase to Petitioner's base offense level.

Regarding trial counsel's performance, Petitioner claims that his trial attorney failed to inform the court of Ms. Woods' statement that she initiated the high-speed car chase. [See 1, at 23.] However, Petitioner's trial counsel *did* raise this argument in his objections to the presentence report:

> Mr. GOREE-BEY objects to the obstruction of justice enhancement as it is based on the decisions and driving behavior of Vanessa Woods and was behavior beyond his control and outside the parameters of any possible conspiratorial purpose.

*United States v. Goree*, Case No. 10-cr-778-2, Dkt. 160, at 9 (N.D. Ill.). In addition, the Court specifically referenced counsel's argument during Petitioner's sentencing. See Sent. Tr. (July 19, 2013) ("Defendant objects to the two-level enhancement under 3C1.2 on the ground that it is based on the decisions and driving behavior of Vanessa Woods and was behavior beyond his control and outside the parameters of any possible conspiratorial purpose."). Counsel's argument adequately conveys the issue that Petitioner claims was missing from his presentence objections,

and that argument was communicated to and received by the Court prior to sentencing. Accordingly, Petitioner's argument is without merit.

Regarding appellate counsel's performance, Petitioner objects to counsel's failure to raise the sentencing-enhancement issue on appeal. A claim of ineffective assistance of appellate counsel is analyzed under the same two-part *Strickland* test, such that a petitioner "must show both that his lawyer's performance was unreasonably deficient and that this inadequacy prejudiced him in the sense that there is a reasonable probability that his case would have been remanded for a new trial or that the decision of the state trial court would have been otherwise modified on appeal." *Howard v. Gramley*, 225 F.3d 784, 790 (7th Cir. 2000). Appellate counsel's performance is insufficient "when counsel omits a 'significant and obvious issue' without a legitimate strategic reason for doing so." *Howard*, 225 F.3d at 790 (quoting *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996)); see also *Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008). Prejudice occurs "'when that omitted issue may have resulted in a reversal of the conviction, or an order for a new trial.'" *Howard*, 225 F.3d at 790 (quoting *Mason*, 97 F.3d at 893).

Here, the sentence-enhancement issue was not a "significant and obvious issue" for appeal because the sentence enhancement was warranted. The car chase in question went on for approximately five miles in a residential neighborhood, swerving into oncoming traffic and around a bus, involving speeds upwards of 60 miles per hour. There is no question that the driving warranted a sentence enhancement. See *United States v. Brown*, 716 F.3d 988, 995–96 (7th Cir. 2013) ("While speeding excessively, [defendant] could have lost control and injured other drivers or pedestrians on or near the road."); *United States v. Velazquez*, 67 F.3d 650, 655 (7th Cir. 1995) (affirming a § 3C1.2 enhancement where defendant led a high-speed car chase

through a residential neighborhood); *United States v. Giacometti*, 28 F.3d 698, 701 (7th Cir. 1994) ("[Defendant's] high speed chase and the ensuing danger to bystanders * * * is clearly the sort of reckless behavior covered by § 3C1.2.").

Petitioner's contention that he was simply a passenger in the van without control of the driver's actions is belied by his own testimony. A defendant is responsible for the reckless conduct of others under § 3C1.2 if "the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused" that conduct. U.S.S.G. § 3C1.2 cmt. n.5. Here, Petitioner admitted to federal agents that during the chase he told Ms. Woods to speed up and try to create some distance between the van and the pursuing officers so that Petitioner could dispose of the drugs. At one point during the chase, Petitioner further instructed Ms. Woods to swerve in front of a bus—which she did—temporarily obscuring the officers' view of the van and allowing Petitioner to throw the drugs out the window unseen.

As many Courts of Appeals have held, in order to apply the enhancement to a passenger in a high-speed chase case, "the district court must specifically find that the passenger 'was responsible for or brought about the driver's conduct in some way,' and must explain why." *United States v. Byrd*, 689 F.3d 636, 640 (6th Cir. 2012) (quoting *United States v. Young*, 33 F.3d 31, 32–33 (9th Cir. 1994)); accord *United States v. Cespedes*, 663 F.3d 685, 691 (3d Cir. 2011) (holding that applying the enhancement to a passenger based on the driver's reckless conduct requires some "form of direct or active participation" by the passenger); *United States v. Chong*, 285 F.3d 343, 346 (4th Cir. 2002) (same); *United States v. Wilfong*, 475 F.3d 1214, 1219–20 (10th Cir. 2007); *United States v. Conley*, 131 F.3d 1387, 1390 (10th Cir. 1997) (same); *United States v. Cook*, 181 F.3d 1232, 1235 (11th Cir. 1999) (same).

Here, the Court discussed the enhancement in detail at Petitioner's sentencing, making specific findings as to Petitioner's involvement in the reckless conduct:

> In terms of obstruction, the PSR recommends and finds a Reckless Endangerment During Flight enhancement is appropriate under 3C1.2 of the Guidelines. That Guideline applies "if the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer."
>
> Defendant objects to the two-level enhancement under 3C1.2 on the ground that it is based on the decisions and driving behavior of Vanessa Woods and was behavior beyond his control and outside the parameters of any possible conspiratorial purpose.
>
> The credible evidence shows by at least a preponderance of the evidence that the defendant, who by his own [r]ights came along on the drug deal to provide assistance and protection to Ms. Woods, both advised Woods in her efforts to evade the police and took advantage of her recklessness and erratic behavior by unloading the evidence into the street before the police succeeded in their attempt to apprehend both Woods and Goree.
>
> Application Note 5 states that "the defendant is accountable for the defendant's own conduct and for conduct that the defendant aided and abetted, counseled, commanded, induced, procured, or willfully caused." Under that standard the 2 point enhancement for obstruction does apply.

Sent. Tr. (July 19, 2013). Accordingly, the Court's findings and conclusions regarding the propriety of the sentencing enhancement were not arbitrary or without legal or factual guidance; instead, the Court noted both parties' arguments and the relevant instruction from the Application Notes to the Sentencing Guidelines, and articulated credible evidence justifying its ultimate decision. As such, the Court's decision to apply the sentencing enhancement was not a promising candidate for appellate review (or appellate reversal), and appellate counsel's decision not to raise this argument was not a violation of Petitioner's right to appellate counsel.

### D. Motion to Amend

Petitioner's reply brief in support of his § 2255 motion includes, in the alternative, a motion to amend his petition based on newly discovered evidence.

The newly discovered evidence in question includes a July 2014 report by the U.S. Department of Justice, Office of the Inspector General ("OIG"), entitled *An Assessment of the 1996 Department of Justice Task Force Review of the FBI Laboratory*. [12, at 9–19 (excerpts)]; full report available at http://oig.justice.gov/reports/2014/e1404.pdf. In short, between 1996 and 2004, a special Task Force created by the Department of Justice investigated the FBI's alleged use of scientifically unsupportable analysis and overstated testimony in criminal prosecutions. In the 2014 OIG report, the OIG analyzed the Task Force's studies of various FBI forensic laboratories, and "ma[d]e five recommendations to the Department [of Justice] and the FBI regarding additional review of and notification to defendants whose convictions may have been tainted by unreliable scientific analyses and testimony." [12, at 13.]

Petitioner links the OIG report to his case by arguing that one of the Government's witnesses at trial—Special Agent Christopher Labno of the Bureau of Alcohol, Tobacco and Firearms ("ATF")—was trained by an FBI Explosives Unit that was analyzed in the report. The report does not mention Agent Labno or the ATF, and Petitioner provided no information indicating that Agent Labno was in fact trained by the FBI Lab Explosives Unit during the relevant time period. Petitioner does not mention any of Agent Labno's testimony that is called into question based on the information in the report.

Petitioner also cites to statistics presented in a Washington Post article stating that in criminal cases dating back to 1972, federal agents gave flawed testimony in at least 90% of cases involving hair DNA, including 96% of the trials in which hair DNA was offered as evidence. [12, at 20.] Petitioner does not attempt to link this article to the facts of his case, and does not claim that his conviction involved hair DNA analysis.

16

Because the federal habeas statute and its accompanying rules do not address motions to amend, courts look to the Federal Rules of Civil Procedure for guidance, which say that "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); see also *Newell v. Hanks*, 283 F.3d 827, 834–35 (7th Cir. 2002). Here, the Court concludes that justice would not be served by allowing Petitioner to amend his § 2255 motion. The OIG report and the Washington Post article relate to subjects that are remarkably distant from those at issue in Petitioner's conviction. Importantly, Petitioner's conviction was not based on any forensic evidence or related testimony proffered by the FBI (including between the years of 1996 and 2004), nor was it based on an analysis of hair DNA. Further, Petitioner has presented no actual "new evidence" that might impeach the credibility of Agent Labno or any other witness who testified in Petitioner's underlying conviction. The mere contention that a government witness was trained by the FBI Explosives Unit (which the Court assumes to be true for purposes of this motion), coupled with the fact that the OIG report found that certain forensic analyses conducted within the FBI's Explosives Unit's laboratory between 1996 and 2004 led to several wrongful convictions, is far too attenuated of a connection to warrant allowing Petitioner to amend his § 2255 motion. The Government was under no obligation to disclose to Petitioner information regarding the OIG's audit of various FBI forensic laboratories, and that information is irrelevant to Petitioner's conviction.

Petitioner's "new evidence" is not the kind of new evidence that would justify amending his § 2255 motion. Petitioner stretches the findings in these reports too far, and his conclusions regarding the impact of these reports on his claims lacks merit. Accordingly, Petitioner's motion to amend his § 2255 motion [12] is denied.

**III.     Certificate of Appealability**

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A habeas petitioner does not have an absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. See *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El*, 537 U.S. at 336; *Evans v. Circuit Court of Cook Cnty., Ill.*, 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Petitioner must demonstrate that reasonable jurists would find the Court's assessment of his § 2255 claims debatable or wrong. *Miller-El*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In view of the analysis set forth above, the Court concludes that Petitioner has not made a substantial showing that reasonable jurists would differ on the merits of his ineffective assistance of counsel claims. Thus, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**IV.    Conclusion**

For these reasons, the Court the Court denies Petitioner's motion to vacate, set aside, or correct his conviction and sentence under 28 U.S.C. § 2255 [1] and his motion to amend his § 2255 motion [12]. The Court declines to certify any issues for appeal under 28 U.S.C. § 2253(c)(2).


Dated: June 29, 2015                                _____
                                                                    Robert M. Dow, Jr.
                                                                    United States District Judge